# In the Matter of the Estate of Arthur Herb, Deceased.

Surrogate's Court, New York County, April 5, 1937.

*Holland & Armstrong*, for the executors.

*John P. Allee [John P. Allee* and *Williamson Pell, Jr.,* of counsel], for Elizabeth Y. Herb, widow.

*Edward N. Swinburne*, special guardian, for Robert E. Herb, infant.

*Adolph E. Gu-gsell*, for Ethel B. Herb, first wife, and Edith Virginia Herb Giese, daughter.

*Showers, Jason & Quinn*, for Beulah Proffer, claimant.

*Samuel Schacter*, for Rafael Rovira Rodriguez, claimant.

DELEHANTY, S. The power of sale given to the executors and trustees in paragraph seventh of the will is not inconsistent with the provisions of paragraph sixth directing the executors and trustees to retain the securities owned by deceased at his death if they are reasonably safe. While the latter provision directs the retention of such securities it does not prohibit sale whenever in the judgment of the executors and trustees the retention of any security would result in loss to the estate or trusts. The second clause of paragraph sixth shows clearly that the direction to retain securities was made so that the executors and trustees would not feel obliged to sell securities at sacrifice prices. The two paragraphs read together demonstrate that it was intended that the retention or sale of securities was to be in the sound discretion of the executors and trustees. If that discretion is fairly exercised and if the executors or trustees deem the retention of any particular security to be hazardous to the estate they are authorized by the will to sell that particular security.

The proposed sale of 1,500 shares of the Atlantic Tank Corporation stock is approved on the terms set forth in the petition. An intermediate order may be submitted on notice authorizing the executors to carry out the terms of the contract of sale and construing the sixth and seventh paragraphs of the will.

Decision in all other issues raised by the petition and answers is reserved until these issues have been submitted for final determination. Proceed accordingly.

DELEHANTY, S. (April 19, 1937). The will of deceased says in part: " Said Trustees shall have the power to invest and reinvest the principal of my said trust estate, if such reinvestment becomes necessary, only in such securities as are legal for trust funds in the State of New York, but in no event, whether such securities are legal for trust funds or not, shall investments be made in any security in which The City Bank Farmers Trust Company may, in any way, either directly or indirectly, be interested, or in which any of its affiliated companies may be interested, or in any securities which do not have the full approval of the co-trustee, Jefferson Armstrong, named herein."

The corporate trustee acts as transfer agent or registrar for the transfer or registration of many securities lawful for investment by trustees. The corporate trustee and its affiliated companies owu many securities which are legal for investment by trustees. The question presented is whether the text quoted is to be given a construction which would make unlawful for investment in this particular estate any security in respect of which the corporate trustee acted as transfer agent or registrar or in respect of which the corporate trustee or its affiliates owned securities of like character. The court holds that that is not the correct interpretation of the quoted language.

Deceased by his quoted text did not intend to prohibit investment in a security otherwise legal for investment merely because the corporate trustee or its affiliates owned or were interested in like securities. Deceased intended to prohibit the trustees from purchasing securities owned by the corporate trustee or any of its affiliates from which a profit might be realized by the corporate trustee or its affiliate. Deceased did not intend to prohibit the purchase from other persons of such a security merely because the corporate trustee or its affiliate held like securities. The trustees are authorized to purchase in the open market or from others than the corporate fiduciary or any of its affiliates any security lawful for investment by trustees. The fact that the corporate trustee is the transfer agent or registrar of such security does not bar the investment.

Since other issues in this accounting proceeding have not been submitted for determination an intermediate decree may be submitted, on notice, construing the quoted clause of the will in accordance with this decision.

DELEHANTY, S. (May 18, 1937). On May 22, 1916, deceased and his first wife, Ethel B. Herb, from whom he was then separated, entered into an agreement which contemplated a full and final settlement of property rights. By the terms of the agreement deceased agreed to convey to her or her nominee a parcel of real property in Kentucky and all his interest in certain personal property. He also agreed to pay to her for and during the remainder of her natural life the sum of $2,400 per annum in equal monthly installments of $200 payable on the first day of each month. Ernest A. Herb, deceased's brother, was a party to the agreement as surety for the annual payments. Deceased and his brother were given the option to deposit at any time with the Farmers Loan and Trust Company of New York city or with the Fidelity & Columbia Trust Company of Louisville, Ky., the sum of $50,000 in cash or securities acceptable to and approved by Ethel B. Herb sufficient in value to produce the annual income of $2,400. This fund was to be held in trust and the entire income therefrom was to be paid to the wife during her lifetime, with the principal upon her death to become vested in Edith Virginia Herb, the only child of the marriage or in her issue if she were then dead or, in default of such issue, in deceased or his distributees. Upon making such deposit deceased and his brother were to be relieved of all personal obligation under the agreement. If the option to deposit the fund or securities was not exercised then upon default in payment of any monthly installment for a period of ninety days, Ethel B. Herb was given the right to recover by action the sum of $50,000 which when paid was to be deposited in trust under conditions identical with those prescribed if deceased and his brother made the deposit. The first wife agreed to undertake the maintenance of the daughter except for the cost of her education and mental training and except for the expense of maintenance while the daughter was in deceased's custody. She also waived all claims on account of alimony, support, maintenance, dower, distributive share or any other claims she might have against the property then owned by deceased or thereafter acquired by him. This first wife of deceased obtained a divorce from him on June 21, 1916. He thereafter remarried.

Deceased died on December 3, 1935. He was survived by his first wife and the daughter of the first marriage and by his widow, Elizabeth Y. Herb, and a son, Robert E. Herb, the only issue of the second marriage. By paragraph first of his will, executed on September 28, 1932, he directed the payment of his debts, funeral expenses and testamentary expenses as soon after his death as might be practicable. By paragraph second he bequeathed to his widow the sum of $2,000. By paragraph third he bequeathed one-half of the

residue of his estate in trust to pay the widow the entire net income during her life with remainder to his son. By paragraph fourth he bequeathed the remaining one-half of the residue of his estate in trust to pay from the income thereof to his first wife the sum of $200 per month during the balance of her life, to accrue, commence and be payable from the date of his death. The balance of the net income from this half of the residuary estate he directed to be paid to the daughter of the first marriage and directed that upon the first wife's death the principal of this trust be paid to the daughter of his first wife.

Under the agreement deceased during his lifetime paid the installments of $200 per month to the first wife. It is apparently assumed that the outright transfers contemplated by the agreement were duly made. He made no deposit of cash or securities pursuant to the option given him by the agreement. The executors of deceased have filed their account. It is indicated that the residuary estate (excluding as a debt the obligation of deceased under the separation agreement) will amount to about $300,000. The account shows payments of $200 per month to the first wife since the death of deceased which are stated to have been made pursuant to the provisions of paragraph fourth of the will. Among the other questions submitted for determination by the executors is the question of the rights of the first wife and daughter under the agreement and under the will.

The first wife and daughter contend that their rights under the agreement survived the death of deceased and are separate and distinct from the provisions for their benefit in paragraph fourth of the will; that they are entitled to the benefits under both instruments; that the monthly payments of $200 listed in Schedule F-1 of the account paid to the first wife since the death of deceased were made pursuant to the provisions of the will and there has been, therefore, a default for more than ninety days in payments under the agreement; that because of this default the executors are now required to deposit the sum of $50,000 in trust under the terms and conditions prescribed by the agreement; and that this sum of $50,000 must be treated as a debt to be discharged before the residuary trusts are set up.

The widow and the special guardian representing the infant son contend that the provision in the will for the benefit of the first wife and daughter was intended by deceased to be an exercise under the agreement of the option to arrange for a deposit of securities or of cash in lieu of the direct monthly payments theretofore made by him; that the provisions of paragraph fourth of the will were intended to be in satisfaction of deceased's obligation under the

agreement; and that deceased did not intend to make a bequest of income of $200 per month and to leave his estate charged additionally with the payments under the agreement.

If deceased intended to exercise the right to deposit a fund or securities in trust to discharge his obligation under the agreement or if, not having the deposit in mind, he did intend that the provisions of the will were to be in lieu of the payments under the agreement then the first wife and daughter are not entitled to benefit under both instruments.

The obligation assumed by deceased in the agreement for payments of $200 monthly during the life of his first wife survived his death and is enforcible as a debt against his estate. (*Barnes* v. *Klug*, 129 App. Div. 192; *Matter of Fuller*, 151 Misc. 387; affd., 242 App. Div. 623; *Matter of Tashenberg*, 149 Misc. 124; *Matter of Golding*, 127 id. 821; *Wilson* v. *Hinman*, 182 N. Y. 408.)

It is argued in behalf of the widow and son that where a provision in a will for the benefit of a creditor is equal to or greater than the amount of the debt owing the creditor a presumption arises that the legacy was intended as a satisfaction of the debt. (*Williams* v. *Crary*, 4 Wend. 443.) The benefits under the will for the first wife and daughter are clearly of greater value than the benefits under the agreement. Although the payments to the wife are the same in each case the fund established under the will as the source of these payments is substantially in excess of the principal amount necessary to produce $2,400 a year so that under the will the first wife has greater assurance that the annual sum will be earned and paid. The daughter receives income not secured by the agreement. She will succeed to a larger capital than that provided by the agreement.

It is argued in opposition, however, that this presumption of satisfaction cannot apply here because of variances between the terms of the agreement and the provisions of the will. It is pointed out that under the will there is no provision for security; that payments are not to be made on the first day of each month as in the agreement; that there is no remedy in the event of default; that there is no right of approval of securities by the first wife; that there is no direction for absolute payment of the annual sum from principal if income is insufficient; that the first wife is not relieved of the daughter's support; and that the remainder interest is different from that contemplated by the agreement in the event of a deposit of securities or cash.

The early cases cited below held that slight variances between the legacy and the debt sufficed to override the presumption. Such cases held that the presumption did not arise when the legacy was

given after payments of debts, or when it was less than the debt, or when the debt was unliquidated, or when the legacy and the debt were payable at different times. (*Reynolds* v. *Robinson*, 82 N. Y. 103; *Phillips* v. *McCombs*, 53 id. 494; *Boughton* v. *Flint*, 74 id. 476; *Matter of Arnton*, 106 App. Div. 326; *Matter of Marshall*, 119 Misc. 407; *Matter of Cole*, 85 id. 630; *Eaton* v. *Benton*, 2 Hill, 576; *Fort* v. *Gooding*, 9 Barb. 371.) If determination of the question here at issue depended upon whether this presumption of satisfaction was or was not effective, it would appear that under the authorities cited the presumption could not be applied and it might be held that the legacy was not intended as a discharge of the obligation under the agreement. Determination of the issue presented does not, however, depend upon this presumption. The correct rule and that which appears to be followed in the later cases is that a legacy to a creditor is not to be deemed in satisfaction of the debt unless so intended by the testator. (*Sheldon* v. *Sheldon*, 133 N. Y. 1; *Matter of Ball*, 221 App. Div. 228; affd., 247 N. Y. 533; *Matter of Blanch*, 126 Misc. 421.) Under this rule a variance between the legacy and the obligation is merely to be considered as one of the factors bearing on intention and the search for intention must be considered in the light of all the facts and circumstances of the particular case. (*Ring* v. *Woolley*, 155 App. Div. 817; *Newcomb* v. *La Roe*, 160 id. 819; *Matter of Seeley*, 67 Misc. 358; *Swan* v. *Swan's Executors*, 136 Va. 496; 117 S. E. 858.)

Deceased made the payments of $200 during his lifetime. The payments of income under the will are to commence at his death. The agreement was a final settlement of property rights and by its terms the first wife waived all rights in deceased's property. At the time of his death the agreement had been in force for nearly twenty years and during that period the first wife received from deceased only the $200 per month payable under its terms. There seems little doubt that it was the intention of deceased to provide a method for continuing the payments that he himself had made during his lifetime. Furthermore, with the obligation under the agreement excluded as a debt, the residuary estate would be divided equally between the first wife and daughter on one hand and the widow and son on the other. This division results in substantial equality of distribution to persons for whom deceased might be expected to provide. This construction is favored. (*Mulheran* v. *Gillespie*, 12 Wend. 349; *Matter of Harden*, 177 App. Div. 831; affd., 221 N. Y. 643.)

Considering the continued payment by deceased over this long period of years of the exact amount required under the agreement, and the provisions in the will for payment of this identical amount

from the date of his death it would require strong evidence to show that deceased intended to create an additional benefit for the first wife and daughter. The court holds on all the facts and circumstances that deceased intended the provisions of paragraph fourth of the will to be an exercise of his option under the agreement to establish a fund to meet the payments and that he intended the trust provisions in the will to be in lieu of the benefits under the agreement. The court holds further that there has been no default under the agreement. The first wife is entitled in any event to the sum of $200 per month. The fact that the account purports to show that these payments were made under paragraph fourth of the will is immaterial. Apparently this allocation was made by the executors because in their view the will provisions were intended to be in lieu of payments under the agreement. The payments already made to the first wife were not from a particular fund but from the general estate. Reference by the executors in the account to the source of these payments cannot affect the rights of other persons interested in the estate. Accordingly the first wife and daughter are not entitled to benefits both under the agreement and under the will.

Although the intention of deceased is plain it seems clear that he has not conformed strictly to the terms of the agreement in setting up in the will a fund for payments to the first wife. She is entitled to insist on a strict performance of the terms of the separation agreement. She is, therefore, in a position to claim now that since the will does not provide for a cash deposit of $50,000 in trust and does not contemplate approval by her of the securities to be placed in trust, she has the right to elect either to retain the benefits under the agreement or accept the provisions of the will in lieu thereof. (*Swan* v. *Swan's Executors, supra.*) If she elects to take the former course then she has no interest in the trust provisions as such. Deceased has clearly indicated that his residuary estate is to be ascertained by excluding as a debt the obligation under the agreement and he has designated as the fund for the source of payments to the first wife and daughter the one-half of that residuary disposed of in paragraph fourth of the will. If the first wife elects to retain the benefits under the agreement the executors have the option either to continue the monthly payments of $200 from the income of that fund, to pay the balance of income to the daughter and the principal to the daughter on the death of her mother, or to establish from that fund a trust of $50,000 in cash or in securities acceptable to the first wife under the terms of the agreement. The balance of the fund would then be placed in trust for the daughter, the income

to be payable to her until her mother's death and the principal then payable to her in accordance with the provisions of paragraph fourth. The daughter has no right of election. She has no interest under the agreement unless and until the fund is set up. (*McEvoy* v. *Central Hanover Bank & Trust Co.*, 274 N. Y. 27.) Her rights depend on the action taken by her mother and upon the consequent action of the executors. If the first wife elects to take the benefits under the will then the obligations under the agreement are discharged. The first wife must make her election by serving a notice thereof on the executors and filing such notice with proof of service within twenty days after the filing of this decision.

One of the other questions submitted requires a construction of paragraph sixth of the will which so far as material reads: " I have great confidence in the securities owned by me, which may become a part of the trust estates herein created, and I direct that my said executors or trustees are not to sell any of the said securities left in my estate, constituting the corpus of the trust estates herein created if said securities, stocks, bonds or mortgages are reasonably safe." Deceased executed his will in September, 1932. At that time he and his brother each owned one-half the common stock of Atanko Corporation. This corporation was organized as a personal holding corporation and its entire capital was invested in common and preferred stocks, mortgages on real estate and municipal and foreign bonds. Proceedings for the dissolution of the corporation were instituted and completed prior to the death of deceased but the securities to which he was entitled in liquidation were not delivered to him prior to his death. The corporation ceased to exist as soon as dissolution was complete and the assets vested in the directors for the benefit of deceased and his brother, subject only to the claims of creditors. Deceased was then the equitable owner of his share of the securities. (*Matter of Friedman*, 177 App. Div. 755, 759.) For practical purposes this equitable ownership was equivalent to absolute ownership and the securities were owned by deceased within the meaning of the provisions of the will. It also appears that at the date of the execution of the will the only other securities owned by deceased were five shares of Brooklyn-Manhattan Transit stock and stock in another corporation in which only he and his brother were interested. It seems clear that deceased referred in paragraph sixth to the securities which were the assets of the holding company and not merely the holding company's shares and the court holds that the executors and trustees are authorized under the terms of the will to retain the securities received in liquidation of Atanko Corporation.

The other two questions of construction submitted by the executors were determined by decisions filed respectively on April 5 and April 19, 1937. (See 163 Misc. 441, 443; Id. 444.)

The proposed compromises of the claims of Beulah M. Proffer and Rafael R. Rodriquez are approved.

The compensation of the firm of attorneys for the executors, of which the individual executor is a member, is allowed in the amount requested but is to cover all services to be rendered in tax proceedings and in the administration of the estate to and including the entry of the decree on the executors' final account. No costs will be allowed on the final account but actual out of pocket disbursements may be taxed.

Submit, on notice, decree construing the will and settling the account accordingly.