S. Samuel Di Falco, S.
This estate is hopelessly insolvent. The accounting filed by the executor lists only one judgment creditor, Muriel Singer, whose judgment in the sum of $6,844.25 is dated June 1, 1955. The former wife of the testator is listed as a general creditor having a claim in the sum of $2,037.
At the hearing it was established that the claim of the former wife was based upon a judgment of the Supreme Court of the State of New York, dated January 29, 1948, and entered in the office of the County Clerk, Bronx County, on January 30, 1948. That judgment directed the decedent to pay to the plaintiff sums of money as set forth in a stipulation annexed to the judgment and incorporated therein. It was conceded at the hearing that pursuant to the terms of the judgment, the decedent became obligated to pay the claimant sums aggregating $2,002.68, with interest from the date of the decedent’s death. The objectant contends that the entire sum due her, with interest,, is preferred *886 over all general claims, and is preferred also over the Singer judgment. The judgment creditor, Muriel Singer, appeared in the proceeding but took no part in the hearing.
In the order of preference given to claims against an insolvent estate, “judgments docketed” are given a priority over all general claims, and, among themselves, judgments are payable “ according to the priority thereof respectively.” (Surrogate’s Ct. Act, § 212.) The preference given to judgments follows an ancient rule of the common law (2 Williams, Executors and Administrators [4th Amer. ed.], p. 856; 3 Schouler, Wills, Executors and Administrators [6th ed.], p. 2447) which based preferences upon the principle that a specialty debt was of a higher nature than a simple debt, and that a debt of record was higher than either of the others. (Ainslie v. Radcliff, 7 Paige Ch. 439, 447.) Under the English rule there was no preference among judgment creditors based upon priority in date. (Williams, supra, p. 862-; Dayton, Surrogates [3d ed.], p. 316.) However, it was provided by statute that 1 ‘ no judgment not docketed and entered in the books kept for that purpose, according to that Act, shall * * * have any preference against heirs, executors or administrators, in the administration of their ancestors’, testators’, or intestates’ effects.” (Williams, supra, p. 859; 4 & 5 Wm. & M. c. 20.) A judgment that was not duly docketed was not entitled to a preference. It was placed by the statute on a level with simple contract debts. (Hickey v. Hayter, 6 Durn. & E. 384; Hall v. Tapper, 3 B. & Ad. 655; Landon v. Ferguson, 3 Russ. 349.) The purpose of the Act of Parliament was to require the recording of the judgments in such a way that fiduciaries might by searching the proper records, know what judgments were outstanding. (Hickey v. Hayter, supra,) The English statute requiring such docketing of judgments was later repealed. (Stevenson v. Weisser, 1 Bradf. 343, 344.)
Our Revised Statutes gave preference only to “ judgments docketed”, thus following the old English rule even to the requirement of docketing the judgment. (2 R. S. 87; Ainslie v. Radcliff, supra, p. 447; Stevenson v. Weisser, supra, pp. 343, 344.) The Revised Statutes however, went further and ordered judgments to be paid out of the personal estate according to the priority in point of time of docketing the judgment, or of enrolling the decree. This provision had no reference to any supposed lien of the judgment or decree upon the real estate of the decedent. (Dayton, supra, p. 315.)
The judgment recovered by the objectant obligated the decedent to make stipulated payments for the support of the *887 objéctant and their children. The court notes that the items which constitute the objéctant’s claim appear to represent arrears in payments during the three years prior to the decedent’s death, which occurred on March 31, 1957. Most, or perhaps all of these arrears, accrued after the date of the Singer judgment. With respect to docketing a judgment for alimony, the Appellate Division has said: “In the case of a judgment for future alimony, however, it is riot possible to docket a judgment at once for all the alimony that may become payable under the judgment, because it is impossible to foresee how lorig the payments are to continue. The only practicable method is to docket successive judgments as the installment of alimony fall due. * * * The court * * _ * has jurisdiction over the clerk’s docket (Code Civ. Proe., | 12G9), and it is entirely proper that application should be made to the court for an order directing the clerk to docket as a judgment any iristallments of alimony which remain unpaid. Such an order is not the rendition of a new judgment for the amount, but merely a means of putting into practical effect the plaintiff’s right to have her judgment put in such form that execution can be issued upon it.” (Thayer v. Thayer, 145 App. Div. 268, 269-270.) And in Viall v. Viall (261 App. Div. 880) the court said: “ Accrued alimony is in the nature of a judgment debt against the husband and the former wife tiiay rriake application that the unpaid installments be docketed as a judgnient arid when it is so docketed proceedings supplementary to judgment may be resorted to. * * * The plaintiff is a creditor. ,s * * But she is not a judgment creditor.”
If section 212 of the Surrogate’s Court Act, be strictly construed in the light of its history, and if the views expressed by the courts in relation to the necessity of docketing judgments for arrears should be strictly applied, it would seem that the objectant’s judgment is not a “ judgment docketed ” within the meaning of section 212. However, the decisive authority seems to support the objectant’s claim to á preference. Matter of Curtis (188 App. Div. 470, affd. 228 N. Y. 534) squarely decided thát a claim against an estate for alimony due and unpaid by the decedent at the time of his death, was a claim for moneys due under a decree of the court and is entitled to a preference under the section of the code from which section 212 was derived. More recently, in Matter of Bassford (277 App. Div. 1128,1129), the court modified the decree of the Surrogate “ so as to provide that to the extent that appellant’s claim, as allowed, is for unpaid installments of alimony, payable pursuant to the provisions of *888 the divorce decree, it be preferred in payment pursuant to subdivision 3 of section 212 of the Surrogate’s Court Act
This court has examined the record on appeal in both of the cited cases. In neither case was there a separate judgment docketed for the arrears in alimony. In each case the claim was based upon the original judgment. The decisions, therefore, arc controlling authority on the question presented. The courts have construed the original judgment or decree, duly entered in the regular records of the court, as ‘ ‘ docketed ’ ’ and “entered” within the meaning of section 212 so as to be entitled to a preference. If the judgment be'docketed on the date of its entry for the purpose of giving it a preference over general claims, then it is entitled to preference within its class according to the priority in the date of docketing.
The objection of the former wife of the decedent is, therefore, sustained.
Objections have also been filed by a son of the testator and by the special guardian of a minor child, both asserting a preference under the judgment of divorce. The agreement which was incorporated in that judgment, required the husband to reinstate $2,500 worth of life insurance and to designate the issue of the marriage as the irrevocable beneficiaries thereof. He agreed to pay all premiums and to keep the policy in full force and effect. If he failed to pay the premiums, the wife had the right to do so and the defendant was required to reimburse her “ as additional alimony”. The policy was in force but it was allowed to lapse sometime prior to the decedent’s death. It was stated that the former wife never knew of the lapse of the policy. Bach child claims a preferred right to payment of $1,250.
It seems patent that the children are not judgment' creditors within the meaning of section 212. The decedent did not obligate himself to pay $2,500, and the judgment did not so provide. Had the wife paid the premiums, the amounts advanced would be due her as additional alimony. Whatever rights the children would have as third-party beneficiaries would have to be separately enforced and incorporated in a new judgment in their favor in order to give them the preferred status of judgment creditors. The judgment upon which they rely give them no standing such as they now claim. Their objections, insofar as they claim a preference over general creditors, are overruled.
The compensation of the attorney for the executor will be fixed on the settlement of the decree. His disbursements may be taxed in a proper bill. Submit decree on notice settling the account accordingly.