John D. Bennett, S.
In this intermediate accounting of the executor, the widow has filed objections to schedule “ Gr ” of the account in that it states that the widow as surviving spouse is not entitled to any share of the estate. Simultaneously, she filed a verified claim against the estate in the amount of $6,060 alleging that this sum is owed her by the estate from June 17, 1964, the date of decedent’s death, to April 6, 1966 pursuant to a separation agreement. Subsequently the parties stipulated before the court that an additional sum of $375 is owed to the widow for the five-week period ending with the decedent’s death.
The separation agreement was executed by the widow and the deceased on March 13,1964. The widow’s claim is based on the following section of the agreement:
“ Fourth: (a) The husband agrees to pay to the wife for the support and mantenanee of the children of the marriage, the sum of $75.00 per week, the first of which payments is to be made on Monday, March 30,1964, which payments shall continue to be paid on each Monday thereafter, by check or U. S. Postal Money Order, at the wife’s residence or at any other place she may in writing designate. The aforesaid sum of $75.00 per week shall continue to be paid by the husband to the wife until the date of the maturity and payment of the second mortgage, which is in the sum of $25,000.00, respecting their former marital home located at 1260 Vedor Drive, Hewlett Bay Park, New York, on which date said support payments for the children shall be reduced to the sum of $60.00 per week, which sum the husband shall continue to pay to the wife weekly for their support in the same manner as hereinbefore provided. As each child reaches the age of 21 years, or sooner marries, said payments shall be reduced by the sum of $20.00.
“ (b) The husband agrees to pay to the wife for the support and maintenance of herself, the sum of $40.00 per week, the first of which payments is to be made on the date of the maturity and payment of the second mortgage respecting the marital home hereinabove referred to, which payments shall continue to be paid weekly thereafter by check or U. S. Postal Money Order at the "wife’s residence or at any other place she may in writing designate. The liability of the husband for the payments respecting the -wife’s support shall cease upon the death of either party or the sooner remarriage of the wife.”
*341 The widow alleges that the portion of the agreement relating to the support and maintenance of the three infant children of the marriage represents a continuing obligation which is to cease only upon an infant attaining the age of 21 years or sooner marrying. As such, she alleges it survived the decedent’s death and is an obligation of his estate.
The special guardian has filed objections to the payment of this claim on behalf of the infants on the grounds that the obligation to pay for the support of his children terminated on his death and is the sole obligation of the mother. Since by the terms of the will the infants share the entire residuary estate equally, their estates thus would be enhanced if the amount claimed is not paid to the widow.
In the normal marital situation, the primary obligation for the support of a child is on the father (Matter of Garcy, 19 A D 2d 811; Domestic Relations Law, § 32, subd. 2); that obligation, however, terminates upon the death of the father and then it becomes the mother’s obligation to support the infant (Matter of Garcy, supra; Domestic Relations Law, § 32, subd. 3).
In cases where the parents have separated or been divorced, these basic statutory obligations are often modified by judgments, decrees or by agreement between the parties. The law is well settled that a judgment or decree in an action for divorce or separation cannot provide for the payment of alimony beyond the lifetime of the husband (Wilson v. Hinman, 182 N. Y. 408). Any liability for the support of a wife and/or children continuing beyond the lifetime of the husband has been based upon a separation agreement existing independently of any judgment or decree (Murray v. Murray, 278 App. Div. 183; Matter of Herb, 163 Misc. 441; Matter of Bernstein, 25 Misc 2d 717). An agreement for the support of a child is treated for most purposes as an agreement for the payment of alimony (Matter of Johnson, 185 Misc. 352, affd. 270 App. Div. 793, affd. 295 N. Y. 857; Schafer v. Schafer, 118 Misc. 254), although provisions for support will survive the death of the person liable if such was the intention of the parties (Galusha v. Galusha, 116 N. Y. 635).
Where the separation agreement is silent as to the duration of support payments, or does not specifically cover the death of the husband, as Surrogate Wixgate stated in Matter of Stableford (174 Misc. 284, 285): “a very different question is raised * * * from that which is posed by an agreement providing for the continuance of the stipulated payments during the life of the payee. In such a case the contract is obviously enforcible according to its terms against the personal representatives of the deceased husband, and this has been the uniform decision *342 [citing cases]. Whether or not such a result is attainable in the absence of express language of a similar nature, is obviously a question of the intention of the parties as indicated by the terms of the agreement when it is read as a whole.”
The court is of the opinion that when read as a whole there is a clear indication in the agreement herein that the parties contemplated that the obligation for payments to the wife for support of the children would terminate at the death of the husband. Article “ Fourth ” thereof, quoted above, covers monthly payments to the wife both for her support and for the support of the children. In subparagraph (b) thereof, dealing with support of the wife, it is obvious that the parties were well aware of the fact that death could intercede because it specifically states that “ the liability of the husband for the payments respecting the wife’s support shall cease upon the death of either party ”. In subparagraph (a) thereof, dealing with support of the children, it is interesting to note that the words “ or sooner marries ” are interlineated in the last sentence reading: “ As each child reaches the age of 21 years, or sooner marries, said payments shall be reduced by the sum of $20.00.”
Article “ Fifth” of the agreement reads as follows: “ The husband further agrees to maintain and be responsible for the payment of premiums with respect to certain life insurance policies upon his life, in the aggregate principal sum of $40,000, in which the children of the marriage are to be named as equal beneficiaries. The husband agrees that he shall not further borrow against, pledge or otherwise encumber or alter or change such policies, the details of which policies are set forth on the annexed schedule, which policies have a total equity of approximately $30,000. The husband agrees to furnish proof unto the wife of the payment of such premiums within fifteen days prior to the expiration date of the grace period respecting each policy and, in the event that he has not paid such premiums on or before said date, the wife shall have the privilege of paying such premiums and charging the husband with such payment. The husband agrees to furnish the wife with written authorization addressed to the respective insurance companies authorizing the wife to inquire as to the status of the said policies. In the event, for any reason whatsoever, said policies are not in full force and effect in accordance with the terms of this provision, the aforesaid sum of $30,000.00 shall constitute a charge upon his estate, in favor of the children. The husband shall have the right to reduce this obligation by one-third as each child reaches the age of 21 yrs or sooner marries.” Again it is noted that *343 the last clause of the next to the last sentence, “ in favor of the children ” and the entire last sentence are interlineated.
In Matter of Bell (121 Misc. 795), a policy of insurance on the life of the husband had been assigned to the wife. Surrogate Foley held (p. 796): “ The provisions in the agreement for the assignment of an insurance policy to the wife plainly contemplated the termination of the agreement by the husband’s death and made provision for her support upon that event.”
The court is of the opinion that when articles “ Fourth ” and “Fifth” are read together there is revealed an unmistakable intent on the part of the parties to the agreement to provide that in the event of the husband’s death the support payments for the children would cease and that the insurance proceeds payable to them would then provide the necessary funds for such support. Accordingly the objections to the account and the claim of the widow for monthly payments allegedly due her for support of the children pursuant to the separation agreement for any period subsequent to the deceased’s date of death arc disallowed. The claim for $375, representing moneys due for support of the children pursuant to the agreement, for the five-week period prior to the deceased’s date of death, is allowed.
The intermediate account will be settled as filed.
The attorneys’ fees and disbursements are allowed in the amounts requested and are for all services rendered, including the submission of a decree and implementation thereof.